**In re Frankie SHELTON, Debtor.**

**Jerry A. Burns, Trustee, Plaintiff,**

v.

**Frankie Dewayne Shelton, et al., Defendant.**

**Bankruptcy No. 99–11452. Adversary No. 01–1003.**

United States Bankruptcy Court, W.D. Kentucky.

Jan. 30, 2002.

Jerry A. Burns, Bowling Green, KY, pro se trustee.

T. Richard Alexander, II, Glasgow, KY, Scott A. Bachert, Bowling Green, KY, Willie M. Neal, Radcliff, KY, for Frankie Dewayne Shelton and Virgil Frank Shelton.

Mark H. Flener, Bowling Green, KY, Merritt S. Deitz, Henderson, KY, for Peoples Bank and Trust Co.

Dennis R. Williams, Covington, KY, for FirStar Bank, NA.

Donald Guier, Frankfort, KY, for Commonwealth of Kentucky.

### MEMORANDUM–OPINION

JOAN LLOYD COOPER, Bankruptcy Judge.

This matter comes before the Court on the Chapter 7 Trustee's Complaint, which seeks to avoid several transactions as post-petition transfers of property of the estate pursuant to 11 U.S.C. §§ 544, 549 and 550 of the United States Bankruptcy Code ("Code"). The Plaintiff, Jerry A. Burns, filed a Motion for Summary Judgment against Defendants, Virgil Frank Shelton ("Virgil Shelton") and Peoples Bank and Trust Company ("Peoples")[1]. With Peoples' Response to the Trustee's Motion, it filed a Counter Motion for Summary Judgment. The Court declines to address this Motion on the basis that it was not timely filed pursuant to this Court's Order entered August 8, 2001, giving interested parties until October 5, 2001 to file dispositive motions. For the reasons set forth herein, the Court **SUSTAINS** the Trustee's Motion for Summary Judgment, **OVERRULES** Peoples' Motion for Summary Judgment and enters Judgment in favor of the Trustee on his claims against Virgil Shelton and Peoples.

### FACTS

On October 7, 1999, the Defendant, Frankie Dewayne Shelton ("Frankie Shelton") filed a Chapter 11 proceeding. The Court converted the Chapter 11 proceeding to a Chapter 7 on January 24, 2000, on

---

1. The Court entered Judgment by default against the Debtor, Frankie Dewayne Shelton, on November 20, 2001. The Plaintiff moved for Judgment by default against the Commonwealth of Kentucky, however, the Court over-ruled the motion on the basis of improper service. Later, the Commonwealth responded, disclaiming any interest in its post-judgment lien.

the oral motion of the United States Trustee. In the Order converting the case, the Court appointed the Plaintiff as the interim trustee.

When he filed his Chapter 11 proceeding, Frankie Shelton owned, among other things, four (4) tracts of real estate in Barren County, Kentucky (the "Real Estate") and numerous items of personalty (the "Personalty"), subject to the mortgage lien of Firstar Bank, NA, ("Firstar"). In 1997, Frankie Shelton pledged to Firstar's predecessor the Real Estate and Personalty as collateral for a loan or loans totaling $1,344,233.49 as of the date of the Petition. The January 24, 2000 Order also overruled the Debtor's motion to sell real estate and granted Firstar's motion to terminate the automatic stay. As of the date of entry of this Memorandum–Opinion, no request has been made or order entered for abandonment of the Real Estate or Personalty.

After the Petition, the Real Estate became the subject of several transfers, which did not include the Trustee or involve specific Court approval. The first transfer occurred in February of 2000, when the Commonwealth of Kentucky recorded a lien in the office of the Clerk of Barren County, Kentucky. On March 10, 2000, Frankie Shelton executed a Quitclaim Deed, recorded on March 29, 2000, conveying title to the Real Estate to Virgil Shelton, his father. On March 29, 2000, Peoples recorded a mortgage encumbering the Real Estate as security for a Note executed by Virgil Shelton in the amount of $668,218.

After termination of the automatic stay, Firstar noticed for April 8, 2000, an auction of the Real Estate and the Personalty, which had been placed in the possession of Shaker Equipment Company ("Shaker"). Virgil Shelton, Frankie Shelton and Firstar entered into a Forbearance Agreement, which among other things, provided that upon payment of $200,000 immediately to Firstar, Firstar would forbear exercising its right to auction the Real Estate and Personalty until March 31, 2000. Upon payment of at least an additional $450,000 by March 31, 2000, Firstar would release its liens.

Virgil Shelton assumed Firstar's responsibility under the Auction Contract entered between Firstar and Shaker. The Auction Contract simply granted Shaker the right to hold a public auction of the Personalty for a fee. Virgil Shelton pledged his "interest" in the Personalty to Peoples, who recorded Chattel Mortgages in Barren County, Kentucky covering this Personalty, as part of the Forbearance Agreement and as collateral for the new loan. The Personalty was later sold by Shaker who disbursed the net proceeds to the Trustee, over the objection of Peoples who alleges a valid, enforceable security interest in the proceeds. There is no evidence that title to the Personalty ever passed to Virgil Shelton, as did the Real Estate. The result of this series of transactions was that Firstar accepted payments from the Sheltons and released its liens on the Real Estate and Personalty.

Peoples and Virgil Shelton admit that a "transfer" occurred, involving property of the estate of Frankie Shelton after the date of the Petition. They also admit that Peoples knew of the bankruptcy proceeding before it recorded its mortgage on the Real Estate. The undisputed evidence before the Court also demonstrates that Virgil Shelton was aware of his son's bankruptcy before he executed Peoples' note and mortgage encumbering the Real Estate.

After filing its initial Answer, Peoples requested leave from the Court to file an Amended Answer and Counterclaim against the Trustee. The Court permitted the Amended Answer, but denied the Mo-

tion regarding the Counterclaim which involved Peoples' claim to turnover of the proceeds of the Personalty. The instant Complaint does not state a claim against Peoples for avoidance of the post-petition lien on the Personalty granted to Peoples by Virgil Shelton. The Court determined that any claim Peoples holds to the proceeds of the Personalty is independent of this Adversary Proceeding, which only involves avoidance regarding the transfer of the Real Estate. The Court observes that like the Real Estate, the Personalty was never abandoned from the estate, but unlike the Real Estate, title to the Personalty was never conveyed to Virgil Shelton. Therefore, the Court determined that the Counterclaim constituted an inappropriate claim against this estate in the context of this Adversary Proceeding.

## CONCLUSIONS OF LAW

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c), made applicable by Fed. R. Bankr.P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The parties agree that there are no facts in dispute. The Court will determine the availability of the defenses as a matter of law.

■ A trustee may avoid a transfer of property of the estate that occurs after the commencement of the case that is not authorized by the Bankruptcy Code or by the court. *See* 11 U.S.C. § 549(a). While Peoples and Virgil Shelton admit that a transfer occurred, involving property of the estate after the commencement of the case, they claim that termination of the automatic stay in this Court's Order of January 24, 2000 constitutes authorization for the transfers pursuant to 11 U.S.C. § 549(a). In other words, Peoples and Virgil Shelton argue that stay termination is tantamount to abandonment by the Trustee of the estate's interest in the Real Estate.

Peoples and Virgil Shelton raised the authorization issue during the course of this case in their Motions to Dismiss. The Court found as a matter of law that the relief afforded Firstar in the January 24, 2000 Order did not authorize Frankie Shelton to convey the Real Estate, admittedly property of the estate, to his father. While stay relief permits a creditor to exercise its state law remedy with respect to its collateral and that is what Firstar had evidently planned with the April 8, 2000 auction, that is not what happened. Here, instead of Firstar completing its auction, Frankie Shelton transferred the Real Estate to his father without notice to the Trustee or Court authority. Firstar had the right to auction the property, but Frankie Shelton did not have the authority to convey property of the estate to his father. Therefore, the Court overruled the Motions to Dismiss.

Given there is no dispute as to the first three elements of the Trustee's burden and this Court's conclusion of law that the January 24, 2000 Order did not grant Frankie Shelton authorization to quitclaim the Real Estate to his father, Virgil Shelton, the Court determines that the Trustee has met his burden of proof that the post-petition transfer of the Real Estate to Virgil Shelton is avoidable pursuant to 11 U.S.C. § 549(a). The Trustee seeks to recover the transfer of the Real Estate, which has been recorded in the real property records of Barren County, Kentucky. In order to do so, the Trustee has made a claim against Virgil Shelton pursuant to 11 U.S.C. § 550(a) for recovery, for the benefit of the estate, the property transferred.

He ultimately seeks an order of the Court permitting the sale of the Real Estate by the Trustee.

■ In his Answer to the Complaint, Virgil Shelton denied the avoidability of the transfer pursuant to 11 U.S.C. §§ 549(a) and 550(a) and like Peoples, filed a Motion to Dismiss on the "authorization" issue. Notwithstanding this, Virgil Shelton has not filed a Response to the Trustee's Motion for Summary Judgment or otherwise provided the Court with any proof of a defense. As the initial transferee, Virgil Shelton is not entitled to a defense under 11 U.S.C. § 550(b). Bankruptcy Rule 6001 places the burden of proving the validity of a post-petition transfer upon the entity claiming its validity. Therefore, as a matter of law and given the state of the record before the Court, the Trustee is entitled to recover the Real Estate from Virgil Shelton pursuant to 11 U.S.C. § 550(a).

■ The Court now turns to Peoples' mortgage lien on the Real Estate. As with the transfer to Virgil Shelton, there is no dispute that Peoples received a post-petition transfer of a mortgage lien on the Real Estate. In light of the Court's ruling on the lack of "authorization" for the transfer of the Real Estate to Virgil Shelton, the mortgage lien granted by him to Peoples is equally avoidable pursuant to 11 U.S.C. § 549(a). Anticipating this ruling, Peoples argues that as a "transferee," it is entitled to the defenses provided pursuant to 11 U.S.C. § 550(b) and (e).[2] Unfortunately for Peoples, avoidance and recovery are entirely different remedies.

11 U.S.C. § 549(a) provides that unauthorized post-petition transfers may be avoided by the Court. If avoidance of the transfer alone is insufficient to restore the transferred property to the estate, the Trustee must seek recovery of the property or its value pursuant to 11 U.S.C. § 550(a). In the case of Virgil Shelton, avoidance under 11 U.S.C. § 549(a) and then recovery pursuant to 11 U.S.C. § 550(a) is necessary to restore the Real Estate to the estate. In Peoples' case, the remedy is quite different.

A mortgage lien may be avoided under 11 U.S.C. § 549(a), but recovery pursuant to 11 U.S.C. § 550(a) is unnecessary since the avoided lien is preserved for the benefit of the estate by operation of 11 U.S.C. § 551, without further order of the court. In this case, the Trustee does not even claim a "recovery" under 11 U.S.C. § 550. He requests avoidance of the mortgage or in the alternative a ruling that the Trustee's interest in the Real Estate is prior and superior to Peoples' interest since he was appointed prior to the recording of their mortgage.

The defense of 11 U.S.C. § 550(b) is available only to a claim for recovery under 11 U.S.C. § 550(a). As the Trustee has proven Peoples' mortgage lien is avoidable pursuant to 11 U.S.C. § 549(a), Peoples cannot use 11 U.S.C. § 550(b) as a defense. This legal point has been most recently considered in *In re Burns*, 269 B.R. 20 (6th Cir. BAP 2001). *Burns* involved a trustee's proceeding to avoid a mortgage assignee's lien on the ground that the debtor did not sign it in the presence of two witnesses as required by Ohio law. The Bankruptcy Appellate Panel (B.A.P.) in *Burns* determined that the trial court properly held that the deed was defective under substantive state law and that the trustee could avoid the invalid deed under 11 U.S.C. § 544(a). The B.A.P. ultimately held that the lender was not entitled to an "improvement" lien under 11 U.S.C. § 550(e), nor was it entitled

---

**2.** Peoples has not claimed a 11 U.S.C. § 549(c) defense and indeed, given the undisputed facts of this case, could not sustain its burden of proof on the elements.

to claim the defenses of 11 U.S.C. § 550(b), concluding that 11 U.S.C. § 550 does not apply at all where a trustee has not sought recovery of any property or its value from the lender. *See Burns* at 25.

▉ Even if the Trustee had made a claim for recovery from Peoples pursuant to 11 U.S.C. § 550, the undisputed facts and circumstances of this transaction do not provide Peoples with a 11 U.S.C. § 550(b) or (e) defense. Peoples failed to sustain its burden of proof that it took the transfer in good faith and without knowledge of the voidability of the transfer avoided. Peoples knew in advance of lending on this transaction that Frankie Shelton transferred the Real Estate to his father, an insider, by way of a Quitclaim Deed which Peoples used prior to its recording to run the title. Peoples also tendered, as an exhibit to its Response, the Forbearance Agreement and Auction Agreement, which impart that Firstar had reduced its claim to judgment before the petition date, had a judgment lien and had obtained relief from the automatic stay in Frankie Shelton's bankruptcy. Any one of these facts would be enough to put Peoples on inquiry notice of a cloud or red flag indicating the potential avoidability of the transfer. While Peoples claims good faith in this transaction in order to claim the benefit of a 11 U.S.C. § 550(e) "improvement lien," even if it were available to Peoples, it simply failed to carry its burden of proof.

▉ Therefore, Peoples principally relies on a defense under the "earmarking doctrine." The "earmarking doctrine" is not statutory, but an equitable doctrine that is considered "... an important exception to the general rule that the use of borrowed funds to discharge the debt constitutes a transfer of property of the debtor." *See In re Montgomery*, 983 F.2d 1389 (6th Cir.1993). While recognized in *Montgomery* as a potential equitable de-

fense, in addition to the codified defenses to the recovery of a preferential transfer, it has not been extended by the Sixth Circuit to provide a defense to a post-petition transfer. Under the facts of this case, the Court is unwilling to extend the "earmarking doctrine" to a post-petition transaction.

▉ In this case, Peoples is not the target for the actual "recovery" by the Trustee. Peoples is named to extinguish its mortgage lien so that the Trustee may sell the Real Estate, upon recovery from Virgil Shelton, free and clear. The "earmarking doctrine" is principally used to prevent the *recovery* from one creditor who receives the proceeds of a loan borrowed from another creditor specifically to discharge the debt paid. The theory is that the borrowed funds, even in the hands of the debtor, were never intended to be generally accessible by the debtor or its creditors and the "property of the estate" is not diminished since one legitimate creditor replaces another.

▉ Here, Peoples funded a transfer used to discharge Frankie Shelton's debt to Firstar. Yet no recovery is claimed against Firstar and no recovery is needed against Peoples, only avoidance of its mortgage lien. Peoples argues the "earmarking doctrine" in order to stand in place of Firstar which had a perfected prepetition lien. Nevertheless, Firstar's mortgage lien was released and Peoples recorded its own mortgage to secure a promissory note executed by Virgil Shelton. Finally, the "earmarking doctrine," being equitable in nature demands that the proponent must, among other things, have "clean hands". While the Court has no evidence of Peoples having a wrongful purpose in this transaction, Peoples has not sustained its burden of proof that it proceeded with a "white heart." The Court has reviewed the entire record and studied Peoples' legal argument in great detail, yet

must find that it has failed to sustain its burden of proof as to the applicability of the "earmarking doctrine" to this transaction.

Peoples argues that avoidance of its mortgage lien will reap a windfall on the creditors of Frankie Shelton's estate. The Court is aware of the extreme result in this case. Yet, the Court observes that Peoples entered into a commercial transaction involving a bankruptcy estate with less than reasonable due diligence.

## CONCLUSION

For the reasons set out above, the Court **SUSTAINS** the Trustee's Motion for Summary Judgment as to the avoidance of the transfer of the Real Estate to Virgil Shelton pursuant to 11 U.S.C. § 549(a) and permits recovery against Virgil Shelton pursuant to 11 U.S.C. § 550(a), and against Peoples Bank as to the avoidance of its mortgage lien pursuant to 11 U.S.C. § 549(a). In accordance with the Court's further rulings herein, the Court determines that Peoples' mortgage lien is preserved for the benefit of the estate pursuant to 11 U.S.C. § 551 as a matter of law. The Court enters a Judgment this date in accordance with this Memorandum–Opinion and which authorizes the Trustee to sell the Real Estate pursuant to 11 U.S.C. § 363.

## JUDGMENT

This matter comes before the Court on the Trustee's Motion for Summary Judgment and the Court having entered a Memorandum–Opinion this same date, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED AND ADJUDGED** that the Trustee's Motion for Summary Judgment is **SUSTAINED**.

1. The post-petition transfer of Frankie Shelton's Real Estate to Virgil Shelton is avoided pursuant to 11 U.S.C. § 549(a);

2. The Trustee is authorized to execute and record, in the office of the Clerk of Barren County, Kentucky, a deed of reconveyance, or other document acceptable in form to the Barren County Clerk, to recover title to the Real Estate to this estate, along with a Notice of this Judgment;

3. The post-petition transfer of a mortgage lien to Peoples Bank and Trust Company is avoided pursuant to 11 U.S.C. § 549(a);

4. Upon recovery of the title to the Real Estate, the Trustee shall be permitted to conduct a sale of the Real Estate pursuant to 11 U.S.C. § 363, upon such notice as is customary pursuant to Bankruptcy Rule 2002; and

5. Peoples' Motion for Summary Judgment is **OVERRULED**.

This is a final and appealable judgment and there is no just reason for delay.